UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MORENO, et al., | No. 2:13-cv-00691-KJM-KJN |
| Plaintiffs, | |
| v. | ORDER |
| ROSS ISLAND SAND & GRAVEL CO., et al., | |
| Defendant. | |

        In this matter, currently in trial, defendant Ross Island Sand & Gravel Co. filed its second motion in limine, which among other things seeks an order excluding at trial any evidence of medical expenses billed to the plaintiffs in excess of amounts paid. *See* Def.'s Mot. in Limine No. 2, at 4–5, ECF No. 121. The motion is fully briefed, *see* Pls.' Opp'n 6, ECF No. 162; Reply 5–7, ECF No. 185, and the court has heard argument. In an in-court hearing before the second day of trial began, the court issued its ruling from the bench, denying the motion. This order more completely explains the court's decision.

        Federal district courts have original jurisdiction over actions in admiralty. 28 U.S.C. § 1333. "With admiralty jurisdiction . . . comes the application of substantive admiralty law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) (citation and quotation marks omitted). In other words, "[w]hen jurisdiction is maritime, the claims are

1

determined under general principles of maritime negligence rather than common law negligence." *Prince v. Thomas*, 25 F. Supp. 2d 1045, 1047 (N.D. Cal. 1997).  The Supreme Court has referred to this law as "general maritime law."  *See, e.g.*, *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 814 (2001).

General maritime law provides both the substantive and procedural rules of decision in admiralty cases.  *See Pope and Talbot v. Hawn*, 346 U.S. 406, 409 (1953) (although the plaintiff was injured within Pennsylvania "and ordinarily his rights would be determined by Pennsylvania law," federal law governed both the substantive and procedural aspects of the action because the basis of his injury was "a maritime tort").  This law is developed by reference to the decisions of federal courts, congressional enactments, and international conventions and treaties. *Norfolk*, 532 U.S. at 813–20 (looking to the Court's prior decisions and the "direction of . . . federal statute"); *Pope & Talbot*, 346 U.S. at 410 (applying "substantial admiralty rights as defined by controlling acts of Congress by interpretive decisions of this Court."); *Prince*, 25 F. Supp. 2d at 1047 ("The sources of maritime negligence law are fashioned by the federal courts, by Congressional enactments, and also by international conventions and treaties.").

"The exercise of admiralty jurisdiction, however, does not result in automatic displacement of state law." *Yamaha*, 516 U.S. at 206 (citation and quotation marks omitted). Federal courts may also look to "well established and generally prevailing" principles of state law, and may apply these rules as federal law.  *See, e.g.*, *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 535 (9th Cir. 1962); *Prince*, 25 F. Supp. 2d at 1047 (looking to "local custom and practice" and "the general dictates of reasonableness and prudent maritime conduct").  That said, "the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 223 (1986); *accord Pope & Talbot*, 346 U.S. at 410 ("[A] state may not deprive a person of any substantial admiralty rights . . . .").

The so-called "collateral source doctrine" is one example of "well established and generally prevailing" law that may apply in admiralty and other federal-law environments.  *See,*

2

*e.g.*, *Gypsum*, 307 F.2d at 535; *Zagklara v. Sprague Energy Corp.*, 919 F. Supp. 2d 163, 168 (D. Me. 2013); *United States v. Shipowners & Merchants Tugboat Co.*, 103 F. Supp. 152, 153 (N.D. Cal. 1952), *aff'd*, 205 F.2d 352 (9th Cir. 1953). "Under maritime law . . . , the collateral source rule generally would apply to bar a tortfeasor from suggesting that the amount of damages awarded should be reduced because of payments received from a third party." *Zagklara*, 919 F. Supp. 2d at 168; *see also Shipowners & Merchants*, 103 F. Supp. at 153 ("It is a well-settled principle of law that a tort-feasor cannot escape the consequences of his wrongdoing merely because his victim was fortunate enough to receive reparation from a collateral source.").[1]

Here, Ross Island argues the court should adopt the rule of *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541 (2011). In *Howell*, the California Supreme Court held that "an injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial." 52 Cal. 4th 541, 566 (2011). The state supreme court found this rule did not "abrogate or modify the collateral source rule" because "the discount medical providers offer the insurer . . . is not a benefit provided to the plaintiff in compensation for his or her injuries and therefore does not come within the rule." *Id.* One justice dissented, arguing the difference between the reasonable value of a person's care (the full amount billed) and the lesser amount a healthcare provider accepts in lieu of that reasonable value is a "payment by others," the traditional ambit of the collateral source rule. *Id.* at 345 (Klein, J., dissenting).

Another judge serving this court[2] recently found *Howell* and later decisions of the California Court of Appeals to be persuasive authority on the interpretation of Federal Rules of

---

[1] In contrast, when a federal court sits in diversity, state substantive law governs state claims, and federal procedural law applies to questions of procedure, including, in most instances, the Federal Rules of Evidence. *See, e.g.*, *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). Federal courts disagree whether state-law collateral source doctrines are substantive or procedural. *See Hill v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 943, 962 (E.D. Cal. 2013) (collecting cases to illustrate the confusion). That question is not an issue here, where federal law supplies both the substantive and procedural rules.

[2] The Honorable Jed S. Rakoff, Senior Judge of the United States District Court for the Southern District of New York, was assigned by the Chief Judge of this District to preside over

3

1  Evidence 401, 402, and 403.  *Hill*, 944 F. Supp. 2d at 962–64 (citing *Howell*, 52 Cal. 4th 541, and
2  *Corenbaum v. Lampkin*, 215 Cal. App. 4th 1308 (2013)).  The *Hill* court found "evidence of any
3  amounts billed above the amounts paid are not of consequence in determining [a] damages claim
4  under California law." *Id.* at 964.  Moreover, because that evidence "would be of only modest
5  probative value for other purposes," and because "its introduction would likely confuse and
6  mislead the jury into considering collateral payments," the court excluded the evidence under
7  Federal Rule of Evidence 404.  *Id.*

8  Then last year, in *McConnell v. Wal-Mart Stores, Inc.*, the District of Nevada
9  rejected the reasoning of *Howell*.  995 F. Supp. 2d 1164, 1170 (D. Nev. 2014).  Although the
10 *McConnell* court interpreted Nevada law, both Nevada and California have adopted a rule against
11 referral to collateral sources as a general matter.  *Compare Proctor v. Castelletti*, 112 Nev. 88, 90
12 (1996) ("We now adopt a per se rule barring the admission of a collateral source of payment for
13 an injury into evidence for any purpose." (emphases added)), and *Howell*, 52 Cal. 4th at 563–64
14 ("[I]f an injured party receives some compensation for his injuries from a source wholly
15 independent of the tortfeasor, such payment should not be deducted from the damages which the
16 plaintiff would otherwise collect from the tortfeasor." (citation omitted)).

17 The *McConnell* court found that evidence of amounts billed was admissible
18 because the difference between the amount billed and the amount paid represented the
19 forgiveness of a debt, not a pre-negotiated and meaningless deduction.  995 F. Supp. 2d at 1170
20 ("[A] creditor's partial forgiveness of a tort victim's medical bills via a write-down is properly
21 considered a third-party 'payment,' evidence of which is barred by the collateral source rule.").
22 /////
23 /////
24 /////
25 /////
26 /////

---

the trial in *Hill*.  *See* Designation & Assignment, *Hill v. Novartis Pharm. Corp.*, No. 06-939 (E.D. Cal. filed July 18, 2006), ECF No. 161.

The *McConnell* court criticized the *Howell* opinion as "schizophrenic":

> The *Howell* case is . . . squarely at odds with the collateral source rule, which utterly disregards the amount of money a tort victim is actually made to pay to remedy his injuries, in favor of awarding the reasonable cost of ameliorating the injuries, notwithstanding any potential "double recovery" by the tort victim. . . . Plaintiff may recover the reasonable value of his treatment, and no more, without regard to whether the amount he paid out of his pocket directly in order to obtain that treatment was reduced by a third-party payor or a third-party payee.

*Id.* at 1170–71.  The court noted this was "in fact the majority rule." *Id.* at 1171 (citing *Tri-Cnty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 598—99 nn.1–2 (Nev. 2012) (Gibbons, J., concurring) (collecting authority and disagreeing with *Howell*)); *see also*, *e.g.*, *Rupp v. Wal-Mart Stores, Inc.*, No. 11-00052, 2012 WL 1951829, at *3 (D. Alaska May 30, 2012) ("[T]he court concludes that the *Howell* approach is inconsistent with the Alaska legislature's collateral source framework.").

There appears to be no applicable Ninth Circuit or Supreme Court authority directly on point; the parties have pointed to none.  As communicated to the parties at hearing, this court therefore finds the discussion in *McConnell* to be a persuasive description of the generally prevailing rule to be distilled from the federal common law.  Moreover, adopting the *Howell* rule would in effect bend federal law to fit the California substantive law of remedies, a result dissonant with the "reverse-*Erie*" doctrine described by the Supreme Court in opinions such as *Offshore Logistics*, 477 U.S. at 223.  The court disagrees that the jury will likely be confused if presented with evidence of amounts billed.  *See Hill*, 944 F. Supp. 2d at 964.  Courts have reached the opposite result, including in admiralty cases.  *See, e.g., Falconer v. Penn Mar., Inc.*, 397 F. Supp. 2d 62, 67 (D. Me. 2005).  In any event, juries may be trusted to accord evidence proper weight and sort out competing inferences with the benefit of any necessary instructions.  *See, e.g., United States v. Evans*, 728 F.3d 953, 964 (9th Cir. 2013); *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

The motion is DENIED.  SO ORDERED.

DATED: October 29, 2015.

UNITED STATES DISTRICT JUDGE